Inc. Ms. Walker. Good afternoon, Your Honors. Helgi Walker for Appellant All American. The CFPB has finally conceded that it is unconstitutionally structured, yet the agency insists that it is not. That is incorrect, and this Court should not allow it. Because All American timely raised a structural constitutional challenge as a defense in a pending enforcement action, we are entitled to judgment. That is true whether or not the removal provision is severed. Collins arose in a fundamentally different posture, an affirmative challenge under the APA to invalidate agency action, where this is a defensive posture to a coercive action brought by the government. And so Collins simply doesn't speak to the ultimate remedy in a case like this. I'll start with the merits. As I mentioned, my friends on the other side now have conceded that the agency is indeed unconstitutionally structured and limits the President's removal powers under Article II unduly. Before you get into the merits, do you have an opinion on whether it's advisable for us to rule on the merits in light of CELIA law, in light of the pending cert in this case? We think you should go forward. The last time we were here in March, we urged you to please go ahead and dispose of the case notwithstanding the pendency of Collins. Then we didn't. So we held for the Fifth Circuit, but we shouldn't hold for the Supreme Court? We think you should go ahead because the Supreme Court is not going to address that ultimate question of remedy that I just described. The Supreme Court added a second question presented on severance, but they did not take up the question of what does a defendant in an enforcement proceeding get if they are a successful separation of powers challenger, and that's got to be decided in this case, and the Supreme Court is not going to speak to that question. Okay. So it's that particular question, but as to the constitutionality of the removal clause, the Second Circuit has now held its opinion, correct? Yes. The Second Circuit is looking at this issue? Yes. But here... And we don't have any adversary treatment, as you're emphasizing right at the beginning. There's no one disagreeing in this court. Well, we think you had sufficient adversary treatment from the first time around when the CFPB briefed and defended the constitutionality of the statute. That's all before you, and we're not arguing... Would it be advisable for us to wait for Paul Clement's submissions in Celia Law? Well, Paul Clement is in the Supreme Court. We're here now. But he's going to be filing, within this month, he'll be filing the exact merits issue you're asking us to decide. That's true, but my client, Mr. Gray, has been waiting now for five years for an answer on whether his life is going to be free of this cloud that's been cast over him by an agency that is admittedly unconstitutional, and the ultimate question of what happens to the motion for judgment on pleadings that we filed that brought the constitutional issue to you is not going to be answered by... When you say, and I appreciate you're taking a few moments, moving to the merits, when you say admittedly unconstitutional, the Collins majority did state that there are salient distinctions with CFPB, correct? I meant admittedly by the United States and now the CFPB itself. So what's the impact of the Collins majority's view that... We think they only strengthen the case for the agency's unconstitutionality, and here's why, Judge Higginson. The two core features of the FIFA that the Collins merits majority emphasized was the combination of a single director leadership structure with a four-cause removal limitation. This agency bears the exact same features as the CFPB quite honorably recognized in footnote two of their October 10th letter brief on the effect of Collins. The minor distinctions between the two oversight boards, the FSOC and the FIFA advisory board, are not of constitutional significance. People of good faith can differ on the ultimate merits question of the agency's structure, but I don't think it's because of the tiny little differences between those two advisory boards. As former Chief Judge Stewart said in dissent from the panel opinion in Collins, the mandatory advisory oversight board distinction does not significantly change the constitutional analysis, but big picture, Collins just drives home that the CFPB has those exact same two core features that took the FIFA out of the Humphreys executor framework and rendered the agency unconstitutional. My merits view was didn't garner many votes, so don't even need to dignify that, but the same question I asked in this case last time, how would we advise Congress to make the CFPB constitutional? What is the feature that needs to be removed? As I read the in-bank decision in Collins, it's the combination of a single director leadership structure with at least a four cause removal limitation. The two together are what toxic, but either one independently would survive? I think, and again to be fair to Collins, on the remedies side, the remedies majority said that it's all we have to do in terms of a cure is to limit the removal restriction, but on the merits in terms of what takes an agency out of the limited exception of Humphreys executor, it's those two features combined. So Congress, I suppose, could get rid of the removal restriction or structure the agency as a multi-member commission, but that really would be a legislative choice for Congress. Thank you. But the United States, if I could just conclude the point about there being no principle distinction between the FIFA analysis in Collins and the CFPB in this case. The United States, in its brief in opposition to the petition for certiorari in Collins, told the court you don't need to take Collins because seal the law. The case about the CFPB is going to dispose of the constitutionality of the FIFA as well. So I think it's pretty clear that you might have a different view about the constitutionality of these agencies, but they're so similar that they're both going to stand or fall on the merits. There are a number of differences, which, as Collins' opinion pointed out, more than you articulated, and some of them, including one member, think they're quite significant. The concession of constitutionality is not determinate. The question, the absence of contest of it, I think, is informative of what we might want to do with it. It's rather awkward to address that. But to be clear, I think there are a number of ways in which the Collins' opinion differentiated itself and distinguished it from our case. And one can disagree about the significance of those, and I understand you would, but they were there for a reason, I suppose. Yeah. I think the reason, Judge Higginbotham, was because the panel at that time was concerned about creating a split with the D.C. Circuit, but this Court's already created the split now with the D.C. Circuit and Collins. Whatever their reasons, this is what they did. Yes, sir. And let me just address those reasons, and I can try to explain why we don't find them persuasive. The CFPB is subject to FSOC oversight, but importantly, that oversight is limited to rulemakings. The FSOC has zero authority to do anything, to say anything about an enforcement action like this. And the CFPB has notoriously exercised its power, perhaps for that reason, in enforcement actions to regulate by enforcement and not by rulemaking. I think they've only adopted 19 rules over the decade that the agency has been in existence. So FSOC is utterly toothless. It is not even advisory, like the FIFA Board. Utterly toothless in an enforcement action like this. Well, of course, I think that Judge Wilkins of the D.C. Circuit pointed out that the Secretary of the Treasurer serves at the pleasure of the President, chairs the Council. In addition, the Chairpersons of the five independent agencies served on the Council, each one of whom the President has the opportunity to appoint, either at the outset or the beginning of the administration. Now, only four members of the FSOC serve as a longer-than-four-year term, and they're potentially appointed for one-year terms by the President. There are a lot of differences here, and I'm not trying to— There are differences, Your Honor, but the question is whether they constitute effective executive branch oversight any more so than the FIFA oversight. And these members— I'm picking you up on the notion that the prior panel of our Court foreclosed these. And that unconstitutionality is controlled by that. With respect, I don't think they foreclosed anything, because the discussion of the CFPB in Collins is dicta. The constitutionality of that agency was not before the Court. It was not briefed. It was not argued. One might find it persuasive or not, but it's certainly not controlling. And the FSOC that supervises the CFPB, again, only in rulemakings, not in a case like this, an enforcement action, can only take action by a two-thirds vote. And that committee, yes, does have some executive branch appointed people on it, but the majority of them are the heads of other independent agencies. But they also report to OMB. They also depend upon congressional support. OMB is barred by statute from reviewing any budgets of the CFPB. There's an explicit statutory ban on any OMB oversight of the CFPB, whereas OMB does not have a bar on reviewing the budget submissions of the FIFA. So there is less authority here over the CFPB than there is of the FSOC. There are a number of consultation provisions that are also present here that are not there. There are, but here's the reality, Judge Higginbotham. In the decade that the CFPB has been in existence and that the FSOC has supposedly been supervising the CFPB, that authority has never been employed to overturn a single action. In fact, it has literally never been invoked. The process for the FSOC oversight is somebody has to petition for an oversight proceeding. That has literally never happened once in the entire life of the agency. It is, to call it a paper tiger would be a compliment. It's more like a paper kitten, the FSOC and its oversight of the CFPB. It's just not a real-world deterrent on anything. And it certainly can't, we think, make or break the constitutional question, these minor differences. As the Supreme Court said in Free Enterprise Fund, the framers did not rest our liberties on bureaucratic minutia. Well, I agree. I mean, we all, of course, seem to be grasping at all sorts of different straws to say this combination is lethal and this one isn't. But we have a century of Supreme Court doctrine, only four cases. But the foundational cases, and this is binding on this panel with all respect, the majority opinion in Bank and Collins explained the genesis of Myers to Humphrey's executor to define some tests from that, including from Free Enterprise Fund, which is the test that we argued in our briefs, which is when a new agency comes along whose structure is so anomalous and so out of step with any historical precedent, including the blueprint laid out in Humphrey's executor for a limited exception from the General Myers rule that the president has unlimited removal powers, that cannot be sustained. The question of Collins majority favors structurally, but it also did explicitly carve out and say we aren't implying a disagreement with the D.C. en banc court. At least the way I look at it, we certainly aren't bound to agree with you. It's an open question. And we know it's the question the Supreme Court's going to deal with, with adversarial treatment. So it's sort of this merits question loops back to my first question, which is what's the advantage? What hasn't been written that you would want us to write other than your client needs relief quickly? Well, the ultimate remedy's question. Severance or no, one can debate whether that's really a remedy. But we think, and we argued this in our petition for cert before a judgment, that the party at bar has got to get relief meaningful to that party at bar or else the court's just rendering an advisory opinion, just an airy declaration that in fact the If the litigant that spent the time and the effort to litigate the constitutional defense doesn't get a meaningful change in the outcome, that's not judicial redress at all. So this larger question of what happens even if the statute is severed to defendants and enforcement actions like this? Does the government get to violate the Constitution and then pick up with an enforcement proceeding and act as if nothing ever happened and take my client to trial? This argument is assuming we do sever. Yes. Your primary argument was courts, but don't let me misstate it, courts don't even have the authority to sever. That was an initial argument that we made, but I Which is your, which is the argument you would recommend to this panel? No. What I would really focus on, Judge Higginson, is the fact that severance is a case-by-case analysis. We know this from Free Enterprise Fund. We know this also from the Remedies Majority Opinion in Collins. You have to look at what Congress intended under Alaska Airlines. Here we have a severability clause. There they didn't. That seems to be heavily Here we also know that Congress, I think, never would have done the deal that would result if the removal restriction is severed. In other words, does anybody really believe that the Congress that passed, Dodd-Frank, would have consolidated in the executive branch enforcement authority over 18 federal statutes while at the same time removing congressional fiscal oversight power? Congress is not that selfless or that generous, and that is the effect of just severing the removal restriction here. It's to consolidate the power of these statutes that used to be administered by independent agencies in the President's exact control. Now, that may be what Article II requires. That's what we think Article II requires, but it was not Congress's vision. And we don't have to guess about that, Judge Higginson. Why? Because the proponents of the CFPB, legislators like Representative Barney Frank and Senator Elizabeth Warren, who, of course, invented this agency back when she was a law professor, told the D.C. Circuit in amicus briefs and told this Court in an amicus brief in this case that making the agency answerable to the President would hamper its ability to function as Congress intended. The independence of the Director from the political winds of the executive branch pressure, that is how they saw it, is not something that they ever would have done, and they told this Court in an amicus brief that they never would have done it. But, right, those are, I mean, those are political statements aimed primarily at the Article I, Article II clash, not aimed at a doctrinal point about severability. I don't, if you look at the amicus brief that the members of Congress filed in the PHH case in support of rehearing in bank, they said we never intended for this agency to be subject to Presidential control, while at the same time removing our appropriations oversight. Congress was willing to give up its appropriations oversight only so long as the agency was also independent of the executive branch. But if we make the agency, or if judges make the agency answerable to the President by removing, severing the removal restriction, but leave the absence of Congressional oversight, that's just not anything that the Congress that passed the CFPA would have ever done, and that's very different from HERA, the statute at issue in Collins. All HERA did was create a new safety and soundness, a safety and soundness regulator for Fannie Mae and Freddie Mac. To be sure, that was an important legislative step. But Congress wasn't consolidating and taking away from independent agencies' power and putting it, you know, under a new statute, which is what we have here. So... Let me just simplify it. On the remedy point, you're saying, yes, there's a severability clause, but... But, under Alaska Airlines, a severability clause is just one indicia of Congressional intent. Here we know from... Creates a rebuttable presumption, and here we know... Statements made by Elizabeth Warren and others that... As an initial matter, as just a point of basic common sense, would Congress have created an agency giving the President new enforcement power over 18 federal consumer protection statutes while, at the same time, freeing the agency from Congress's power of the purse and, indeed, even from any Congressional Appropriations Committee oversight? Is that a deal that Congress would ever have struck? That just does not pass the, at least, Washington, D.C., reality test. And we also know it because of what the members have told us. These are regular... I'm sure it's very important for your client, but it's a financial enforcement mechanism. I don't really see how it ties to the removability of the director of the entity. Congress's vision, when it created the CFPB, in our view, it was a non-constitutional vision, to be sure. Congress's vision was that this pressure at all. Certainly not from the executive branch, hence the four-cause removal limitation, and also to be completely set free of even any Congressional fiscal oversight. It's funded, of course, from Federal Reserve funds, which are itself self-funding. So there's actually a double layer of fiscal funding for the agency. It's just not plausible that Congress would have given up so much of its own oversight power, while at the same time giving the President so much power over statutes that used to be administered by independent agencies. Again, Congress is just not that self-abnegating. All pending enforcement actions across the country by the agency. No. Our rule is very limited, our remedial rule. It would only apply to pending enforcement actions, not yet final, where the constitutional issue was timely preserved. The CFPB told the Supreme Court, in its brief in opposition to our cert petition, that that was at most, quote, a handful of cases, 19, 19 pending cases, and we don't even know how many of those have the issue timely preserved. I would wager, I don't know, maybe half of them. So it's not that many cases, Your Honor, and in our view, it's worth it to, assuming you agree with us on the merits, it's worth it to vindicate the separation of powers, a constitutional structural safeguard, to give the defendants in those cases, if they're timely preserved, and if there's no statute of limitations problem with any attempted ratification, which might also solve the problem, to give those parties relief. And we think that relief is required by cases like NRA, decided by the D.C. Circuit, Judge Silverman joined by the late Pat Wald and Ruth Bader Ginsburg, you know, no giant Article II hawks, Judge Higginson said, that where a defendant in an enforcement action raises a meritorious structural separation of powers challenge, that litigant is entitled to relief. And the relief that they're entitled to, Judge Silverman explained, is dismissal of the case. Judgment entered for the defendant. Your time has expired. You've saved time for a vote. Thank you, Your Honor. Mr. DeMille-Wagman. May it please the Court. The Bureau agrees with defendants here that the for-cause removal provision that applies to the Bureau's director is unconstitutional. But we part with defendants with respect to whether this Court should await the Supreme Court's decision in the case of SALA law versus CFPB. The very same issue that this Court is asked to consider, the constitutionality of the Bureau's for-cause removal provision, is before that Court. Well, let me explain how we handle that on this Court. I'm quoting from a published opinion issued November 5th, so less than a month ago, and Judge Higginson was on the panel. And here's what we said. We recognize that the Supreme Court has recently agreed to review, in this case it was a Ninth Circuit decision, addressing the issue at hand. Those are my words now. Again, quoting, nonetheless, quote, we have traditionally held that even when the Supreme Court has granted certiorari in a relevant case, we will continue to follow binding precedent, close quote, citing United States v. Isla Salcedo, which is a 2018 opinion of this Court and further citing a 1986 case. So for a long, long time, our practice on this Court has been not to wait because of a cert grant. There are many good reasons for that, one of which is the Supreme Court may not reach the issue or a case may be settled or there may be a jurisdictional issue that's raised or a cert may be dismissed as improperly our circuit law by continuing to decide cases such as this and then if the Supreme Court wishes to put our case on hold and, you know, to do a GVR down the line or whatever, of course, they have the right to do that. But what you're requesting is not the custom and practice of the Fifth Circuit. I'm just offering that as a, that the Court could do that, but if this Court chooses pursuant to its precedent to address this case now, the issues in this case are controlled by this Court's en banc decision in Collins. In Collins, the Court held that the forecast from the Court, Your Honor? Because of the quotation of precedent by Judge Smith, if you say the Collins majority controls us on both issues, then I would agree with Judge Smith because the quote he read said when we have binding law, then we tend to follow it. But I thought the Collins majority explicitly said we are not binding as to the constitutionality of the CFPB. That issue is squarely before the Supreme Court. It's adversarially presented. You asked the Second Circuit to hold their case, and our law exactly does not bind us as to resolving that issue, doesn't it? Well, Your Honor, in the Collins case, and I believe it's at 938 Fed 3rd at page 587 to 588, right at the bottom of the page there, this Court said that a four-cause removal provision restricts the President's authority and that the situation that existed with respect to the FHFA did not come within the recognized exception for multimember agencies. That's the situation that exists with respect to us. They also said there are salient distinctions with the CFPB. Yes, you did, Your Honor, in the panel's opinion. And that is for this Court to decide. That was stated, the en banc majority opinion. Yes. So how can you say that case bound us if we explicitly said we weren't? Well, Your Honor, I think this Court could, if this Court reads it that way, then I think this Court could hold, and that's, of course, what we argued before, that the CFPB's four-cause removal provision was constitutional. But if this Court, and if this Court holds that the CFPB's structure is constitutional, then, of course, it should remand so that the Bureau's case against defendants could go forward. If this Court evaluates Collins and determines that the CFPB is unconstitutional, then the remedy that we would suggest is that this Court sever the four-cause removal provision and remand to the Bureau. I'm right that the majority doesn't decide the issue. Wouldn't a third option be we should appoint counsel, just as the Supreme Court did, and had adversarial treatment because the two of you are both telling us one thing? Where are we getting the opposite viewpoint? Well, Your Honor, I think we expressed it in our red brief and in the argument we already made before this Court last March. And I think those are the sorts of arguments that Paul Clement will present before the Supreme Court. And this Court certainly could look to those arguments. Beg your pardon? Wait. When is this? I know they're conferencing on the cert in this case next week, right? I think it's Friday. I think it's the day after tomorrow, a conference. A conference on our case. Yes, on this case. And then Paul Clement's going to be filing the only adversarial treatment of the central issue this month, too, right? But later. Paul Clement and presumably other amici will file those sorts of arguments, too, and our brief in — in — in — and I think — So if we do hold the case and decide to issue an opinion, is it your recommendation that we wait to receive all the submissions, amici, etc., being given in the Supreme Court? I think so, Your Honor. And I think then, once — once the Supreme Court resolves the issue — the Supreme Court may hold that the Bureau is constitutional. That resolves this case. If it holds it's unconstitutional, there may be remedies issues that remain. There may not be. At that point, we would be glad to provide further briefing. And I love coming down to New Orleans, Your Honor. We could come here for a — for a — for a third — for a third argument in this case. But if this Court resolves the constitutional issue now, we would recommend that the Court sever the for-cause removal provision and return this case to the district court for further proceedings. If we do resolve it, as Judge Smith — If you do. If — yeah. And as he's pointed out, we have done that. Other cases, I think June Medical comes to mind, we haven't done it. We've waited, even when cert hasn't yet been granted. So our court seems to have different habits. But if we do reach the merits, what more would you want us to say, if we agree with both of you that it's unconstitutional? What else out there needs to be said as to the unconstitutionality of the structure? With respect, what — what do you need to say? What hasn't been said. I — I think this Court could say what it said in the Collins case, that — This Court could say that there — the — the — the court in Collins pointed out distinctions, but never said that the CFPB was constitutional. This Court, I think, could rest on the central en banc holding that the for-cause removal provision restricts the President and that this case does not fall within the exception for — for multimember agencies. I think what we could say that would be valuable would be to write something suggesting to Congress how they could make your agency constitutional. What's your opinion on that? Which of the many features that have been identified are the ones that make it in the Goldilocks zone? Well, I guess we talked about the Goldilocks zone last time, Your Honor. But do you agree with opposing counsel's remarks when she identified the two that should be removed? I — I would say this, Your Honor. If this Court were to sever the for-cause removal provision and then instruct Congress that the agency — the agency would be constitutional if it fell within the recognized exemption for multimembered agencies, then Congress would know that it should create the Consumer Financial Protection Commission or something and create a commission similar to the Federal Trade Commission with a — a multimember commission with bipartisan membership and all those attributes. It may be Groundhog Day, but we asked — I asked these same questions last time. Why does the — what's the — what's the enhanced Article 2 power to a multimember? The president's got to remove a bunch of people. How does that enhance his power? How does that enhance his power? Your Honor — Your Honor, that is — it's not so much that it enhances his power. It's that the — it's that the — the — Yeah, I hope it goes better in the Supreme Court. Your Honor, it's that — it's that there is a — the power to — the president is vested with the power to see that the laws are enforced, and there is a limited exception expressed through Humphrey's executor, through the Wiener case, for multimembered agencies. Humphrey's executor didn't mention that. Beg your pardon? Humphrey's executor didn't mention that as a relevant fact. Humphrey's — Humphrey's executor did look to the quasi-legislative, quasi-judicial aspect of the agency. Morrison looked to whether there's a distinction. I think it is — we discussed this in our brief, and it is — you know, they — our current agency's position is that the agency structure is unconstitutional. But this Court should — Current agency position with the — Yes. Do you mean to imply a little levity when you're laughing, or not? No, sir, Your Honor. Absolutely not. I'm just saying it's a difficult position here that I argued aggressively one way last time. But no, not at all. Our director has taken the position that our agency's position will line up with the position taken by the Department of Justice in the Saylor law case. No, I do not mean to express levity with respect to that position. Logically, people talk about liberty interests being enhanced if we tighten up the removal power. Whose liberty interests? Is it the regulated entities? How is liberty enhanced if we tell Congress they can't have insert for cause removal? Whose liberty — is that a factor, or is it just diminution of presidential authority? It's a — it's a diminution of presidential authority, Your Honor, because — Okay, so does that connect to anyone's liberty interests, though? Well, the defendants here, or others, have the right to have — and have this agency, when it's overseeing them, be sufficiently accountable to the president. So the for cause removal provision makes our agency not sufficiently accountable to the president. As the Department of Justice argued in its briefing, Saylor law, if this court — if the Supreme Court — or this court — if the Supreme Court cannot reach that conclusion without overturning Humphrey's executor and Weiner, Morrison v. Olson, they ask that the court do that. Judge Kavanaugh managed to present arguments in his dissent and in his original panel opinion in the PHH case with respect to that. But we would ask this court that if this court does choose to sever the for cause removal provision, it should remand to the district court and — so that the district court can continue — can continue proceedings. That would give defendants what they are entitled to. Then the prosecution of the case would go forward, conducted by an agency that is sufficiently accountable — sufficiently accountable to the president. Were this court to dismiss the complaint, as defendants asked, that would give defendants a windfall. It would allow them to go scot-free for the violations alleged in the Bureau's complaint. It would be a misfortune for the consumers who've been affected by defendants' conduct. Now defendants mentioned the D.C. Circuit's decision in Federal Election Commission v. NRA Political Victory Fund, a Judge Silberman decision. In that case, Judge Silberman dismissed, overturned an action brought by the FEC against the NRA Political Victory Fund because he held that the FEC was unconstitutionally structured. Right — the relevant case that this court should consider is not that case, but FEC v. Legitech, a decision that was reached about two and a half years later by the D.C. Circuit, also written by Judge Silberman. In that case, the district court had dismissed the FEC's action against Legitech because the complaint against Legitech had been issued by the FEC when it was unconstitutionally structured. However, after the decision in NRA Political Victory Fund, the FEC was reconstituted constitutionally. It then voted to ratify its decision to bring an action against Legitech. When the Legitech case got to the D.C. Circuit — again, another Judge Silberman opinion — when the Legitech case got to the D.C. Circuit, Legitech said that the D.C. Circuit should affirm the district court's dismissal of the case. But the D.C. Circuit disagreed because it said that ratification of the complaint by the now constitutional FEC was sufficient to address any prejudice that the defendants had been subject to as a result of the original case. Now, if the D.C. Circuit did not want the case to be remanded, if the Bureau, which — if this Court were to sever the four-cause removal provision — if this — if the Bureau — and was then accountable to the President — did not want the case to go forward, the case would end. If the President didn't want the case to go forward, he could presumably so instruct the Bureau's director, and if she didn't dismiss the case, he could dismiss her. That would give defendants everything that they are entitled to. Now, defendants here also argue that severance is not appropriate. They cite to Justice Thomas's concurrence in Murphy v. NCAA. That was a concurrence by one justice. It was not adopted by other justices. But it was inconsistent with this Court's decision in Collins when this Court severed the four-cause removal provision. And they stress the importance of the four-cause removal provision to those who originally were interested in establishing the Bureau. But so much more was important to Congress when it created the Bureau. Yes, they said that it was important that the agency be independent, and certainly four-cause removal is a hallmark of agency independence. But many other things were important to the, when the Bureau was created. For example, Congress wanted to consolidate the enforcement of 19 consumer financial protection statutes in one agency because it wanted it to be an agency that had a singular mission, consumer protection. Formerly, these statutes had been enforced, at least some of them, by agencies with divided missions. Consumer protection on the one hand, safety and soundness of the regulated entities on the other. Congress required the Bureau to establish a supervision program so that it could conduct confidential supervisory examinations of certain providers of consumer financial products and services. Congress required the Bureau to create a financial literacy program. It required the Bureau to create an Office of Service Member Affairs to assist members of the armed forces in making better financial decisions. It required the Bureau to create an office, to establish an Office of Financial Protection for older Americans. It gave the Bureau rulemaking authority and required the Bureau to issue rules implementing statutes regarding mortgages, regarding credit reports, regarding remittances. If this court were to strike down all of the Consumer Financial Protection Act, it would strike down the Bureau's supervision program, financial literacy programs, the service member affairs, older Americans, and who knows what would happen to the Bureau. What about her comment that this would actually apply to less than a dozen pending enforcement actions? If the court were to strike down, to strike down the Bureau in its entirety, in the entire of Title 10? The remedy relief she finished by pointing out would be that it would actually just be a very, very few entities who would actually be able to benefit. Your Honor, we would suggest that once this court has, if this court were not to strike down the forecaused removal, not to strike down the entirety of Title 10, but simply to sever the forecaused removal provision, then those cases, those cases could go forward and they would be, it would be under the pursuance. The Collins majority, en banc majority, is essentially binding on that issue, that we would have, if anything, it's stronger here with the severability clause or not? It's, well, Collins is a little bit different, but in Collins, the plaintiffs asked this court to overturn the net worth sweep, a final action taken by, by the, at that, at that point, on Congress here, they're pointing out it's an enforcement action, which is, is precisely what CFPB does. It's, it's, they're, really all they do is. No, Your Honor, that's the point I'm trying to make. We have a supervision program, financial literacies, all these other things that we do, they're all important. Striking down the Bureau would strike down this other non-enforcement stuff as well. And with respect to, if this court were to, uh, uh, sever the provision and hold the Bureau unconstitutional, I presume that would have an impact on any other cases within this circuit. Um, it would be different once the Supreme Court addresses the Bureau's forecast removal provision. If the Supreme Court chose to sever that provision, um, then that would be, then that would have an impact nationwide, different, uh, uh, it, it, it might then have to be addressed case by case. Here, defendants also argue, and if this court were to sever the, um, forecast removal provision and were to, as defendants suggest, dismiss, we would ask that this court also address defendants' argument regarding statute of limitations. Um, the, the, the Bureau brought its case against defendants under the Consumer Financial Protection Act. The statute of limitations in that act is at 12 U.S.C. 5564 G. 1. It says, except as permitted by law and equity, no action enforcing the Consumer Financial Protection Act may be brought more than three years after the date of discovery. Defendants' argument here, which I think imposes a confiscatory tax on credulity, is that somehow the Bureau could discover a violation. It's, it's constitutional enough to discover a violation and begin the running of the three year statute of limitations, but it's not constitutional enough to file a complaint and toll the statute of limitations. That argument can't be right. It's not been addressed by the district court, but it's, it's simply a legal argument that, um, is, is directly linked to this court's determination as to whether the forecast removal provision is unconstitutional. So we would suggest that if this court chooses, as it can, to address this case now, the issues are resolved by the Collins decision. This court should sever the forecast removal provision, remand this matter to the district court for further, for further proceedings by what would then be a constitutionally structured Bureau. That will address any prejudice that defendants may have suffered. Does this court have any further questions? All right. Thank you, Mr. DeMille-Waggman. You're welcome. Ms. Walker for a vote. We agree, we agree with Judge Smith that the court should follow the binding precedent in Collins. The merits of this case is controlled by Collins. These are the last two sentences in Collins, quote, granting both removal protection and full agency leadership to a single FIFA director stretches the independent agency pattern beyond what the constitution allows. As I said, the principles of law enunciated in the merits opinion cannot be seriously distinguished from this agency, which bears the exact same two features, as much as one might disagree with the merits opinion. And in footnote two, this is what I mentioned before, the CFPB said, while the panel observed that there were salient distinctions between the Bureau and the FIFA, the organic statutes of both agencies share the same critical features. They each contain a provision that restricts the president's ability to remove the single director of an agency tasked with exercising executive power. Those are controlling holdings. The writing is on the wall. This agency is exactly like the FIFA. There is no principled way to distinguish it. The discussion in the panel opinion that was reinstated is dicta. That is not controlling on this court. It's the holding and the analysis that supports the holding on the FIFA that controls now in this court. I don't think there's any reason to wait for SELA law. There has been adversarial treatment in this court. We've been in this court for the last year and a half with, if I may say so, competent counsel on both sides. The arguments are out there. They've been ventilated across the country. Everybody knows what the arguments are, pro and con, for the CFPB. I don't see what the benefit is for waiting. And there are lives, real lives at stake in this case, Mr. Gray and his family. He's a small businessman from Mississippi, has been hounded by the CFPB for the last five years for matters that the state of Mississippi has already fully resolved. He has paid almost a million-dollar penalty. He has lost his banking licenses. He is not in the financial services industry anymore. What harm could come by finally answering the case that he has suffered through for so long? Mr. Wagman-DeMille brought up Legitech, the second in the pair of cases out of the D.C. Circuit. The reason that case came out the way it did, with not the same remedy, no dismissal of the case for the defendant, is that the FEC permanently and properly reconstituted itself. It kicked the ex-officio congressional members off the board and re-voted to reconstitute itself. That was a permanent restructuring of the agency that finally solved the constitutional problem. We don't have that here. Director Kraninger is not subject to removal at will by the president. There has been no restructuring of the agency. There has not been any severance of the removal restriction yet. There can be no proper ratification. I'm also glad my friend brought up ratification because in this case, and this might not be true in the other 19 pending enforcement actions, and I think the number in which this issue has been raised and preserved is smaller than that, Judge Higginson. I think that's what you were trying to ask, Mr. Wagman-DeMille. In this case, the ratification was plainly barred by the statute of limitations. Mick Mulvaney, the acting director, purported to ratify this suit on September 3, 2014. That's Joint Appendix 3332. Excuse me. He purported to ratify on February 5, 2018, Joint Appendix 7183, but the agency filed its civil investigative demand against All-American on September 3, 2014. That's Joint Appendix 3332. They were investigating with the Mississippi regulators as far back as 2014. When Mick Mulvaney tried to ratify in 2018, it was simply out of time. And yes, the agency is unconstitutional, and therefore, it had no authority to bring a coercive enforcement action in this case, which is our ultimate remedies point. But that doesn't mean that they didn't have knowledge of the underlying facts here as far back as 2014. That makes the attempted ratification in 2018 just out of time, and those are undisputed facts that are in this record. I would just like to close, unless the Court has any further questions, by noting that severance does not remediate the injury to our client or to defendants in pending enforcement actions. What's the injury that creates standing to raise a justiciable separation of powers defense in a case like this? Well, the majority opinion in Collins tells us that it's the original coercive action that's brought against the party that creates the traceability factor in the standing test. And here, our injury is traceable to what? To the filing of this complaint in the Southern District of Mississippi federal court against All-American. It's the filing of the complaint that created this injury. That injury has prevailed from then up until today, and perhaps even after today, and it's that injury that gives us the standing under the traceability prong that has to be redressed if in fact there is a merits violation. It can't be that you've got standing because it's traceable to a government action. But if the government action is deemed unconstitutional, that action isn't ultimately vacated. And the windfall in this case, Your Honor, would not be to Michael Gray in Mississippi. The windfall would be to the government. If it is in fact true that the statute is, that the agency is unconstitutionally structured, Congress would get to violate the structural safeguards of the Constitution utterly consequence-free. We're not talking about missing a filing deadline. We're not talking about a mistake in a footnote. We're talking about the separation of powers in our Constitution. And when Congress violates that and creates an agency that then in turn violates the rights of the American people, because that is a liberty-protecting interest, not to be subject to an unconstitutional agency, that's a windfall. If they get to just go back to district court and continue on with this case as if literally the Constitution had never been violated, I think that would be the windfall, Your Honors. Thank you so much. All right, thank you, Ms. Walker. Your case is under submission and the court is in recess.